IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHONG H. CHOE, et al.,                 §
                                       §
                    Plaintiffs,        §
                                       §   Civil Action No. 3:13-CV-0120-D
VS.                                    §
                                       §
BANK OF AMERICA, N.A.,                 §
                                       §
                    Defendant.         §

MEMORANDUM OPINION
AND ORDER

        In this removed action arising from plaintiffs' attempt to stop a residential foreclosure,

defendant Bank of America, N.A. ("BOA") moves to dismiss under Fed. R. Civ. P. 9(b) and

12(b)(6).  For the reasons set out below, the court grants the motion but also grants plaintiffs

leave to amend.

I

        In May 2012 plaintiffs Chong and Gretchen Choe (the "Choes") sought a loan

modification from defendant BOA.[1]  They completed the necessary forms and submitted the

required supporting documentation.  Their request was denied, however, allegedly because

the "assistance requested was not an option" and the loan modification request was

"incomplete."  Am. Compl. ¶ 13.  When the Choes contacted BOA, they were informed that

_____

        [1]In deciding defendant's Rule 12(b)(6) motion, the court construes the Choes's
complaint in the light most favorable to them, accepts as true all well-pleaded factual
allegations, and draws all reasonable inferences in their favor.  *See, e.g.*, *Lovick v. Ritemoney
Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

their request had been closed because the file was incomplete and that, to reopen their request, they would need to re-file the supporting documents.  The Choes did as they were instructed.  BOA then notified the Choes that it had received their request and had forwarded it to the appropriate department.

In August 2012 BOA notified the Choes that they were ineligible for a Home Affordable Modification Program loan modification due to their debt-to-income ratio.  After contacting the U.S. Department of Housing and Urban Development ("HUD") and determining that they appeared to qualify under a different loan modification program, the Choes discovered that their application had been denied due to BOA's mislabeling of their second quarter 2012 profit-loss statement.  BOA requested that the Choes resubmit their loan modification request for a third time, which they did.  BOA again informed the Choes that it had received their request and had forwarded it to the appropriate department.  On September 26 and 27, 2012 BOA sent two foreclosure notices addressed to Chong Choe and Gretchen H. "Cole."

In October 2012 the Choes were informed that their request for a loan modification had been denied because they had insufficient income and too many expenses.  When the Choes explained that Gretchen Choe had recently received a raise at work and that Chong Choe was no longer paying child support, BOA told the Choes that they would need to submit a fourth request for modification explaining their change in circumstances.  When the Choes checked the status of their loan modification on BOA's website, the website stated that the Choes's request had not been forwarded to be reviewed.

After several postponements of the foreclosure sale and numerous telephone conversations with BOA, the Choes were advised during a December 5, 2012 telephone conversation that their loan modification application had been denied. The following day, the Choes were informed that their home was scheduled for foreclosure on January 1, 2013.

On December 28, 2012 the Choes filed a petition in state court alleging claims for breach of contract, third-party beneficiary breach of contract, and fraud. They sought, *inter alia*, a temporary restraining order to prevent BOA from foreclosing on their residence. BOA removed the case to this court and filed a motion to dismiss under Rules 9(b) and 12(b)(6). In response, the Choes filed an unopposed motion for leave to amend their complaint, which the court granted. In addition to the claims pleaded in the state court petition, the amended complaint alleges claims for negligence, violation of the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006), and violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011). BOA now moves to dismiss the amended complaint under Rules 9(b) and 12(b)(6).

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration

omitted)).  To survive BOA's motion to dismiss under Rule 12(b)(6), the Choes must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud."  *Turner v. AmericaHomeKey, Inc*., 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, ___ Fed. Appx. ___, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (per curiam).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal

quotation marks omitted). More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (citations omitted). Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief," "punctilious pleading detail" is not required. *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (internal quotation marks and citations omitted). "The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.).

## III

The court begins with the Choes's breach of contract claim.

## A

BOA moves under Rule 12(b)(6) to dismiss the Choes's breach of contract claim on various grounds, including the statute of frauds. The Choes rely on a provision of the promissory note that "'any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower.'" Ps. Br. 2 (quoting D. App. 2). They posit that BOA breached the promissory note because Gretchen Choe never received the required "notice"; instead, what BOA sent was addressed to "Gretchen H. Cole." The Choes argue on the same basis (i.e., notices sent to "Gretchen H. Cole") that BOA breached the deed of trust, which requires that "[a]ny notice to Borrower provided for

in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method."  Ps. Br. 2 (citing D. App. 8).  BOA replies that the Choes do not dispute that they actually received the notices of default; instead, they complain only about how Gretchen Choe's last name is spelled on the notices. BOA maintains that the notices of default were sent to the Choes's address, indicate a specific default amount related to a specific loan number, describe the method for curing the default, and were addressed to "Chong H. Choe and Gretchen H. Cole."  BOA argues that, despite the misspelling of Gretchen Choe's surname, Chong Choe had actual notice of the default, Gretchen Choe had constructive notice of the default, and constructive notice is all that is required under Tex. Prop. Code Ann. § 51.002(e) (West 2007).

B

1

The essence of the Choes's argument is that BOA is liable for breach of contract by foreclosing on their property without giving them the notice that the promissory note and deed of trust required.  But the Choes do not allege that they did not actually receive notice of default or that they believed the notices they did receive were meant for someone else. In fact, the amended complaint alleges the opposite.  The Choes assert that BOA "sent Plaintiffs foreclosure notices," Am. Compl. ¶ 32, and that BOA "sent Plaintiffs a Notice of Trustee Sale and scheduled Plaintiffs' home for sale," *id.* ¶ 34.  The amended complaint also alleges that the Choes actually received notice of the foreclosure, asserting that the Choes "inquired into the status of the loan modification *and the scheduled foreclosure date.*"  *Id.*

¶ 36 (emphasis added).  If the Choes had not received notice of the foreclosure they would have had no reason to have inquired into the scheduled foreclosure date.  The Choes have therefore pleaded that they *did* receive notice of the proposed foreclosure.  Moreover, the notice of default itself contains the Choes's mortgage account number, property address, and properly spells the name of Chong Choe.[2]  When considered in context and in light of the allegations of the amended complaint, the misspelling of Gretchen Choe's surname is insufficient to plausibly allege a breach either of the promissory note or the deed of trust.

2

The Choes appear to have abandoned their breach of contract claim based on BOA's "continuing with the foreclosure process in spite of the agreement to review plaintiffs for a loan modification."  *Id*. ¶ 53.  To the extent they intend to pursue this claim, the court concludes that it is barred by the statute of frauds.  Under Texas law, the statute of frauds applies to loan agreements for amounts exceeding $50,000.  See Tex. Bus. & Com. Code Ann. § 26.02(a)-(b) (West 2009).  The alleged oral contract here—an alleged agreement not to foreclose while the loan modification application was pending—would alter the written

---

[2]In considering BOA's motion to dismiss, the court can consider the notice of default, which the Choes have included in the appendix to their response, because the amended complaint refers to this document and it is central to plaintiffs' claim that they did not receive proper notice of default.  *See, e.g.*, *Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 829 n.2 (N.D. Tex. 2011) (Fitzwater, C.J.) ("'[T]he court may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim.'" (quoting *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003)).

loan agreement in the promissory note and deed of trust.[3]  Thus the alleged oral contract is

unenforceable under the statute of frauds.  *See, e.g.*, *Bryant v. Bank of Am., N.A.*, 2012 WL

2681361, at *12 (E.D. Tex. June 6, 2012) ("[W]hen a modification relates to a matter that

must be in writing, the modification must also be in writing."); *Myers v. Bank of Am., N.A.*,

2012 WL 1107687, at *4 (E.D. Tex. Mar. 31, 2012) (dismissing similar claim for breach of

oral contract promising not to foreclose while loan modification was pending).  The court

dismisses the Choes's claim for breach of the alleged oral contract not to foreclose.

3

To the extent the Choes allege that BOA breached "the agreement" through "its lack

of response, inconsistent representations, negligently applying for the wrong program, and

making it impossible for the Plaintiffs to perform due to its delays and indifference to the

Plaintiffs' file," Am. Compl. ¶ 52, they have failed to plausibly allege a breach of contract

claim because the "offer [of] a loan modification," *id.*, assuming the Choes were eligible, is

just that: an offer.  The Choes have not pleaded a valid and enforceable contract that could

have been breached by the alleged misconduct of BOA.

Accordingly, the Choes's breach of contract claim is dismissed under Rule 12(b)(6)

for failure to state a claim on which relief can be granted.

---

[3]The alleged oral contract would alter the promissory note and deed of trust because
neither restricts the lender's power to foreclose while an application for loan modification
is pending.

IV

A

The Choes bring a breach of contract claim as third-party beneficiaries of an April 4, 2012 consent judgment in *United States v. Bank of America Corp.*, No. 12-CV-00361-RMC ("Consent Judgment").  BOA moves to dismiss this claim, arguing that the Choes are not parties to the Consent Judgment; the terms of the Consent Judgment indicate that there is no private right of action for allegedly-aggrieved borrowers; and because nothing in the Consent Judgment rebuts the presumption that third parties are merely incidental beneficiaries, the Choes lack standing to sue.  The Choes respond that they are third-party beneficiaries under the Consent Judgment and are proper parties to sue "because they were part of the class the consent judgment had in mind and had applied for the type of loan modification that the consent judgment prescribed."  Ps. Br. 3-4.

B

It is well settled that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975).  The Choes have not pointed to any provision of the Consent Judgment that grants non-parties standing to enforce its provisions, and the court has not found any.  *See United States v. United Fruit Co.*, 1994 WL 199225, at *2 (5th Cir. May 13, 1994) (per curiam) (unpublished opinion) (holding that party did not have standing to enforce consent decree when he failed to point to any provision that granted non-party standing to enforce its provisions).  Moreover, courts

- 9 -

faced with similar claims have held that "mortgagors . . . do not have standing to enforce a consent decree that banks have entered into with the government." *Reynolds v. Bank of Am., N.A.*, 2013 WL 1904090, at *10 (N.D. Tex. May 8, 2013) (Lindsay, J.); *see also Daniels v. JPMorgan Chase, N.A.*, 2011 WL 7040036, at *3 (E.D. Tex. Dec. 14, 2011).  Accordingly, the court dismisses the Choes's breach of contract claim for lack of standing.

        To the extent the Choes allege that they are entitled to the "consumer relief" provided for in § III, ¶ 5 of the Consent Judgment, this is not the proper forum in which to seek such relief.  The Consent Judgment expressly provides that the United States District Court for the District of Columbia "retains jurisdiction for the duration of this Consent Judgment to enforce its terms."  D. App. 20; *see also id.* at 36-37 ("Servicer's obligations under this Consent Judgment shall be enforceable *solely in the U.S. District Court for the District of Columbia*." (emphasis added)).  Moreover, even if it were permissible to seek relief in this court, the Choes have not plausibly pleaded an entitlement to such relief.  Section III, ¶ 5 provides:

> Defendant shall provide $7,626,200,000 of relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraphs 1-8 of Exhibit D and $948,000,000 of refinancing relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraph 9 of Exhibit D, to remediate harms allegedly caused by the alleged unlawful conduct of Defendant.

*Id*. at 18.  The Choes have failed to allege any facts that would enable the court to infer that they meet the eligibility criteria for consumer relief under the Consent Judgment and accompanying documents.  Moreover, although they assert that BOA "did not follow the

procedures required of [it] in the consent judgment," Am. Compl. ¶ 57, they have failed to allege any specific procedure that BOA was required, but failed, to follow.  Accordingly, for these additional reasons, the court dismisses the Choes's claim for breach of contract as third party beneficiaries under the Consent Judgment.

V

The court now considers the Choes's fraud claim.

A

The Choes allege that BOA falsely represented that their loan modification documents were under review and had been forwarded to the appropriate department within BOA.  They aver that, in reliance on these representations, they missed "too many payments" on their loan, the loan modification process failed, and BOA foreclosed on their property.  *Id.* at ¶¶ 61-62.

BOA moves to dismiss the fraud claim, contending that the Choes have failed to satisfy the pleading requirements of Rule 9(b) and have failed to allege that BOA made a misrepresentation of material fact.  BOA also posits that the fraud claim must be dismissed under the economic loss doctrine because the sole basis for any liability against BOA is contractual in nature.  The Choes respond that BOA made multiple misrepresentations during the modification process.  They argue that the economic loss doctrine argument is inapposite because they are seeking exemplary damages and damages for mental anguish.

B

The elements of common law fraud in Texas are:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law) (citations omitted).  The Choes allege that "[h]ad the Bank been straight-forward from the beginning with all their instructions and effort, then payments could have been made and foreclosure avoided."  Am. Compl. ¶ 61.  They do not, however, allege any facts that would permit the inference that they were able to make their monthly mortgage payments but did not do so because they believed they would be approved for a loan modification.  Moreover, although they allege that BOA misrepresented the fact that their loan modification application was under review and had been forwarded to the appropriate department, they do not plead that BOA misrepresented to them that they no longer needed to make monthly mortgage payments or that the pendency of their application temporarily relieved them of their monthly payment obligation.  Accordingly, the Choes have failed to plausibly allege that the injury they suffered (i.e., having their home posted for foreclosure) occurred as a result of a misrepresentation by BOA, and their fraud claim is dismissed.

VI

The court now considers the Choes's negligence claim.

A

The Choes allege that BOA was negligent in sending the foreclosure notices addressed to "Chong Choe and Gretchen H. Cole" instead of Gretchen Choe. They also assert that, because of this deficient notice, the acceleration of their loan was wrongful and they suffered injury as a proximate result.

BOA moves to dismiss the negligence claim, contending that the Choes have failed to plead sufficient facts to show that BOA did not exercise "ordinary care"; that they have not pleaded with specificity how they were harmed by a foreclosure notice that contained a misspelling; and that the claim is precluded by the economic loss doctrine. The Choes respond that, in sending the notices of default to "Gretchen H. Cole," BOA failed to comply with the legal duty to follow the statutory notice provisions in Tex. Prop. Code Ann. § 51.002. The Choes posit that their mental anguish claims defeat the economic loss rule.

B

"Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997) (citing *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993)). The Choes's negligence claim fails because they have failed to allege a plausible legal duty. Under Texas law, there is no special relationship between a

- 13 -

mortgagee and a mortgagor that gives rise to a duty of care.  *See Collier v. Wells Fargo Home Mortg.*, 2006 WL 1464170, at *8 (N.D. Tex. May 26, 2006) (Kinkeade, J.) (citing *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App. 2005, pet. denied)).

The Choes's negligence claim is also subject to dismissal under the economic loss doctrine.  Texas law "prohibit[s] tort claims if the parties' relationship and attendant duties arise from a contract."  *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F.Supp.2d 616, 625 (N.D. Tex. 2011) (Means, J.) (citing *Quintanilla v. K-Bin, Inc.*, 993 F. Supp. 560, 563 (S.D. Tex. 1998); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 493-95 (Tex. 1991) (holding that plaintiff cannot recover under tort law "[w]hen the only loss or damage is to the subject matter of the contract")).  Although the Choes argue that they are entitled to mental anguish damages,

> [w]ithout intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result.  These include suits for wrongful death and actions by bystanders for a close family member's serious injury.

*City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997) (citations omitted).  The Choes have not pleaded a plausible basis to recover mental anguish damages because they do not allege serious bodily injury, wrongful death, or bystander liability in the wrongful foreclosure of their property. Accordingly, because the Choes do not allege injury apart from the economic loss of being denied modification and having their residence foreclosed on, the economic loss

doctrine bars their negligence claim.  *See Sw. Bell Tel. Co.*, 809 S.W.2d at 494-95 ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." (citation omitted)).

Accordingly, the Choes's negligence claim is dismissed.

VII

BOA moves to dismiss the Choes's TDCPA claim, arguing that they have failed to plead any facts showing that BOA used deceptive means to collect a debt or threatened to take an action prohibited by law.  The Choes respond that BOA violated the TDCPA when it accelerated their note based on defective notice, i.e., a notice that was not given to Gretchen Choe.

Assuming *arguendo* that the TDCPA applies,[4] the court grants BOA's motion to dismiss this claim.  The Choes base their claim on the allegation that BOA "accelerated the note based on defective notice" because BOA sent the notice of foreclosure to "Chong Choe and Gretchen H. Cole."  Am. Compl. ¶ 67.  "For a statement to constitute a misrepresentation under the TDC[P]A, Defendants must have made a false or misleading assertion."  *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 632 (N.D. Tex. 2010) (Lynn, J.) (citation omitted); *see Burr v. JPMorgan Chase Bank, N.A.*, 2012 WL 1059043, at *7 (S.D. Tex. Mar. 28, 2012) ("'For a statement to constitute a misrepresentation under the TDC[P]A, the debt

---

[4] *See Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 732 (N.D. Tex. 2011) (Fitzwater, C.J.) (making "an *Erie*-guess that the TDCPA can apply to actions taken in foreclosing on real property").

collector must have made an affirmative statement that was false or misleading.'" (quoting *Bellaish v. Chase Home Fin., LLC*, 2011 WL 4902958, at *2 (S.D. Tex. Oct. 14, 2011)). The Choes have not pleaded a plausible claim that BOA acted deceptively. They do not allege that the misspelling of Gretchen Choe's surname caused them to believe the notices they received were meant for someone else. In fact, the Choes plead that, after they received the notices, they had numerous conversations with BOA regarding the scheduled foreclosure of their property, thus precluding the inference that they did not receive the required notices. Because they do not allege any other basis for their TDCPA claim, the court dismisses this claim.

## VIII

Finally, the court considers the Choes's DTPA claim.

BOA moves to dismiss this claim on the ground that the Choes are not DTPA "consumers." The Choes do not respond to this argument; instead, they posit that because notice was not given to Gretchen Choe, the acceleration with respect to her property was wrongful and violated the DTPA as a matter of law.

To qualify as a "consumer" under the DTPA, a plaintiff must (1) seek or acquire goods or services and (2) the goods or services purchased or leased must form the basis of the complaint. *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983); *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)). In *La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex. 1984), the Supreme Court of Texas held

that a lender may be subject to a DTPA claim if the borrower's "objective" was the purchase or lease of a good or service. *Id.* at 567. But "subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'good or services' element of the DTPA." *Broyles v. Chase Home Fin.*, 2011 WL 1428904, at *4 (N.D. Tex. Apr.13, 2011) (Fish, J.); *see also Preston v. Seterus, Inc.*, ___ F.Supp.2d ___, 2013 WL 1091272, at *23 (N.D. Tex. Mar. 15, 2013) (Lindsay, J.); *Swim v. Bank of Am, N.A..*, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012) (Lynn, J.). Because the Choes allege in their amended complaint that they sought to modify their mortgage loan and not to acquire, by purchase or lease, a "good" or "service," they have not pleaded a plausible DTPA claim as a matter of law, and the claim is dismissed.

IX

Although the court is dismissing all of the Choes's claims, it will permit them to replead. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Because the Choes have not stated that they cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 30 days from the date this memorandum opinion and order is filed to file a third amended complaint. If BOA contends that it has a basis to do so, it may move anew to dismiss the

third amended complaint.

*   *   *

For the reasons explained, the court grants defendant's motion to dismiss and grants

plaintiffs leave to replead.

**SO ORDERED.**

June 25, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE