IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHONG H. CHOE, et al., § | |
| § | |
| Plaintiffs, § | |
| § | Civil Action No. 3:13-CV-0120-D |
| VS. § | |
| § | |
| BANK OF AMERICA, N.A., § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this action in which plaintiffs bring contract, fraud, and statutory claims arising from the conduct of defendant Bank of America, N.A. ("BOA") in relation to plaintiffs' residential loan, BOA moves to dismiss plaintiffs' second amended complaint under Fed. R. Civ. P. 9(b) and 12(b)(6). For the reasons explained, the court grants the motion as to all of plaintiffs' claims except their fraud claim.

I

Because this case is the subject of a prior opinion, *Choe v. Bank of America, N.A.*, 2013 WL 3196571 (N.D. Tex. June 25, 2013) (Fitzwater, C.J.) ("*Choe I*"), the court will recount only the background facts and procedural history necessary to understand the present decision.

In April 2012 plaintiffs Chong and Gretchen Choe (the "Choes") contacted BOA to

inquire about obtaining a loan modification.[1] After speaking with Customer Relationship Manager Theresa Becker ("Becker"), the Choes visited BOA's website, "which advised that a [loan] modification would mean that missed payments would be rolled into a new loan and would be repaid by extending the loan." 2d Am. Compl. ¶ 8. The Choes then completed the necessary forms and submitted the required supporting documentation. Their request for a loan modification was denied, however, allegedly because the "assistance requested was not an option" and the loan modification request was "incomplete." *Id.* ¶¶ 13, 15. When the Choes contacted BOA, they were informed that their request had been closed because the file was incomplete and that, to reopen their request, they would need to re-file the supporting documents. The Choes did as they were instructed.

In July 2012 the Choes contacted BOA to inquire into the status of their loan modification application. Becker represented to the Choes that the request was under review, the review process would take at least 30 days, the Choes's residence would not go into foreclosure, and Becker would call the Choes in seven to ten days and pass along any updates. Later that month, the Choes contacted BOA and made a mortgage payment. They allege that, at that point, they were ready, willing, and able to continue making mortgage payments to BOA.

In August 2012 BOA notified the Choes that they were ineligible for a federal Home

---

[1] In deciding defendant's Rule 12(b)(6) motion, the court construes the Choes's second amended complaint in the light most favorable to them, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Affordable Modification Program ("HAMP") loan modification due to their debt-to-income ratio. The Choes then contacted the U.S. Department of Housing and Urban Development ("HUD") and spoke with HUD-certified housing counselor James Wells ("Wells"). Wells confirmed that the Choes should never have been considered for HAMP because a recent refinance made them ineligible. Wells noted that the Choes did appear to qualify, however, under a different loan modification program. He explained that "the modification program would roll [the Choes's] late payments into a new loan and the missed payments would be made at the end of [the] new loan term or by extending the loan term." *Id.* ¶ 29. The Choes then discovered that their application had been denied due to BOA's mislabeling of their second quarter 2012 profit/loss statement. BOA requested that the Choes resubmit their loan modification request for a third time, which they did.

On September 26 and 27, 2012 BOA sent two foreclosure notices addressed to Chong Choe and Gretchen H. "Cole." One of the two notices advised the Choes that they "might be eligible for a modification and that a modification would move missed payments to the end of the loan and/or forgive some portion of the missed payments." *Id.* ¶ 35. During a telephone conversation in October 2012 with a BOA customer service agent, the Choes were informed that a loan modification would allow missed payments to be moved to the end of the loan. That same day, BOA sent the Choes a letter stating that they could still be evaluated for alternatives to foreclosure and that BOA would review their information.

Later in October the Choes were informed that their request for a loan modification had been denied because they had insufficient income and too many expenses. When the

Choes explained that Gretchen Choe had recently received a raise at work and that Chong Choe was no longer paying child support, BOA told the Choes that they would need to submit a fourth request for a modification explaining their changed circumstances. The Choes gathered the requested documents and sent them to BOA, but in an October 31, 2012 letter, BOA informed the Choes that their request for a review was not received with enough time prior to the scheduled foreclosure date, and the foreclosure sale would continue as scheduled.

After several postponements of the foreclosure sale and numerous telephone conversations with BOA, the Choes were advised during a December 5, 2012 telephone conversation that their loan modification application had been denied. The following day, the Choes were informed that their home was scheduled for foreclosure on January 1, 2013. The Choes never received written confirmation that their request for a loan modification had been denied and were never provided with the reasons for the denial.

On December 28, 2012 the Choes filed suit in state court alleging claims for breach of contract, third-party beneficiary breach of contract, and fraud. After BOA removed the case to this court, the Choes amended their complaint to add claims for negligence, violation of the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006), and violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011). The court granted BOA's motion to dismiss the amended complaint pursuant to Rules 9(b) and 12(b)(6) but permitted the Choes to replead. The Choes's second amended complaint alleges claims

for breach of contract, fraud, and violations of the TDCPA and DTPA.  BOA now moves to dismiss the second amended complaint under Rules 9(b) and 12(b)(6).

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)).  To survive BOA's motion to dismiss under Rule 12(b)(6), the Choes must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court begins with the Choes's breach of contract claim.

A

BOA moves under Rule 12(b)(6) to dismiss the Choes's breach of contract claim, arguing that they cannot plead any set of facts giving rise to a plausible right to relief under any contractual theory and that the claim is barred by the Statute of Frauds. The Choes respond that BOA made a written offer of a loan modification, they accepted BOA's offer by completing the application and providing the requested documents, and BOA breached this agreement when it "disqualified the [Choes] for a loan modification they were otherwise eligible to receive," and when it simultaneously pursued foreclosure and loan modification. Ps. Br. 2-3. They argue that the agreement BOA breached is independent of the deed of trust and is "a separately executed and breached agreement." *Id.* at 3.

In *Choe I* the court held that the Choes had "failed to plausibly allege a breach of contract claim because the 'offer [of] a loan modification,' assuming the Choes were eligible, is just that: an offer." *Choe I*, 2013 WL 3196571, at *4 (citation omitted).[2] Although the Choes allege in their second amended complaint that "[t]he offer came in writing, and the plaintiffs accepted the offer in writing by completing the application and providing the requested documents," 2d Am. Compl. ¶ 55, they have still not pleaded the existence of a

---

[2]For reasons the court explains below, it concludes that BOA's conduct does not even amount to an offer. Instead, the Choes allege that BOA invited them to submit an application to be considered for a loan modification, which is, at most, an invitation to enter into negotiations.

- 6 -

valid and enforceable contract that BOA could have breached. The Choes allege that they received a letter from BOA "stating that [BOA] had 'several programs designed to help homeowners who [were] having trouble making their monthly mortgage payments' and that it was 'possible that one could help' [the Choes]." *Id.* ¶ 6. They assert that BOA provided instructions on the various forms and supporting documentation that were required before the Choes could be considered for a loan modification. These allegations are insufficient, however, to plausibly allege a valid and enforceable contract under Texas law. *See, e.g.*, *Goldman v. Olmstead*, ___ S.W.3d ___, 2013 WL 5758189, at *4 (Tex. App. Oct. 24, 2013, no pet. h.) ("The elements of a valid and enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." (citing *Effel v. McGarry*, 339 S.W.3d 789, 792 (Tex. App. 2011, pet. denied))). At most, the Choes allege that BOA invited them to submit an application to be considered for a loan modification. An "invitation to enter into negotiations," however, is not an "offer." *Baldwin v. New*, 736 S.W.2d 148, 152 (Tex. App. 1987, writ denied); *see also Edmunds v. Hous. Lighting & Power Co.*, 472 S.W.2d 797, 799 (Tex. Civ. App. 1971, writ ref'd n.r.e.) (holding that brochure mailed to plaintiff was "nothing more than an invitation to negotiate, leaving many matters open which would of necessity have to be settled by a written agreement or contract"). "It is a necessary requirement that an offer in order to be valid and binding on acceptance must be sufficiently definite to enable a court reasonably to give it meaning, and if an offer contemplates an

acceptance by merely an affirmative answer, the offer itself must contain all the terms necessary for the required definiteness." *Edmunds*, 472 S.W.2d at 799. BOA's letter to the Choes stating that it had several programs designed to help homeowners and that it was possible that one could help the Choes does not satisfy these requirements. Nor have the Choes plausibly alleged any of the other requirements under Texas law for a valid and enforceable contract. *See Goldman*, 2013 WL 5758189, at *4. Because they have not plausibly alleged the existence of a contract separate and apart from the deed of trust,[3] the Choes's breach of contract claim must be dismissed.

IV

The court next considers the Choes's fraud claim.

A

The Choes base their fraud cause of action on the following grounds: first, BOA offered them a loan modification and then falsely represented that the documents were under review, causing them to think their responsibility (presumably to make mortgage payments) was finished, and leaving them uncertain about whether BOA would pursue foreclosure; second, BOA represented that the Choes's loan would not go into foreclosure or that foreclosure had been stopped, making them believe that the loan modification process was working toward an alternative to foreclosure; and, third, BOA represented to the Choes that

---

[3]The Choes maintain that the contract on which they base their breach of contract claim is "independent of" the deed of trust. Ps. Br. 3. To the extent they allege that BOA's actions breached the deed of trust, this basis for their breach of contract claim fails for the reasons explained in *Choe I*, 2013 WL 3196571, at *3-4.

missed payments would be rolled into the new loan by extending the loan and/or forgiving part of the loan, thereby causing them to delay the modification process to the point that too many payments had been missed.

BOA moves to dismiss the fraud claim on these grounds: first, the second amended complaint does not comply with Rule 9(b); second, the claim is barred by the Statute of Frauds; third, the Choes have not alleged a misrepresentation or a misrepresentation of material fact, and instead make broad allegations of wrongdoing regarding the loan modification process; and, fourth, the claim is barred by the economic loss doctrine. Because the Choes have properly pleaded at least two grounds in support of this claim, and because neither the Statute of Frauds nor the economic loss doctrine bars the Choes's fraud claim, the court denies BOA's motion to dismiss this claim.

B

"The elements of common law fraud in Texas are: (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result." *Choe I*, 2013 WL 3196571, at *5 (citing *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law)). BOA maintains that the Choes do not allege that BOA made a misrepresentation of material fact and that they have failed to satisfy the pleading standard under Rule 9(b). The court considers these arguments together.

1

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. Feb. 22, 2013) (per curiam). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted). More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (citations omitted). Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief," "punctilious pleading detail" is not required. *Steiner v. Southmark Corp.*, 734 F.Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (internal quotation marks and citations omitted). "The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.).

2

The Choes have plausibly pleaded that BOA made at least two misrepresentations of material fact. First, they allege that BOA falsely represented to them that their loan application documents were under review when, in reality, their file had not been forwarded to the proper department at BOA. Second, they assert that BOA falsely represented to them that their loan would not go into foreclosure or that foreclosure had been stopped. These misrepresentations were material because they allegedly caused the Choes to believe that their "responsibility" (presumably to continue making mortgage payments) was finished while BOA reviewed their loan modification application, and that, through the loan modification process, BOA was working toward an alternative to foreclosure.

To the extent BOA challenges the Choes's fraud allegations under Rule 9(b), the court holds that the Choes have pleaded with the requisite specificity at least two grounds in support of their fraud claim. As to the alleged misrepresentation that the Choes's loan application documents were under review, the Choes allege that, when they contacted BOA on July 5, 2012 to inquire into the status of their loan modification, Becker told them that their request was "under review." 2d Am. Compl. ¶ 21. They also assert that, when they contacted BOA on September 18, 2012, they spoke with a representative named Claire who told them that their loan modification request was in review and that they should call back in one or two weeks. And they allege that, on numerous occasions, including, for example, on September 20, 2012 and October 25, 2012, BOA sent them letters stating that their request for a loan modification had been received and had been forwarded to the appropriate

department.[4] These allegations sufficiently plead the "who, what, when, where, and how" of the alleged fraud and thus satisfy the heightened pleading requirements of Rule 9(b). *See Williams*, 417 F.3d at 453.

Concerning the second ground for the Choes's fraud claim, the Choes allege that Becker told them on July 5, 2012 that they "would not go into foreclosure." 2d Am. Compl. ¶ 21. This allegation provides the date, identity of the speaker, the context of the conversation (an inquiry into the status of the Choes's loan modification application), and quotes what was said. And the Choes elsewhere plead the other essential elements of fraud. As such, these allegations satisfy Rule 9(b).

C

BOA argues that the Statute of Frauds bars the Choes's fraud claim as a matter of law because the claim is based on BOA's alleged oral representations regarding the Choes's application for a loan modification, and because any modification of the Choes's mortgage would necessarily result in the creation of a lien on real property, it is necessary that BOA's representations be in writing. The court disagrees.

In *Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001), the Supreme Court of Texas held that "the Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply

---

[4]They also allege that, "[o]n November 19, 2012, [they] called [] Becker, and she . . . further assured the[m] that they need not be concerned as [they] were being reviewed for alternative loan modification programs." 2d Am. Compl. ¶ 47.

with the Statute of Frauds." *Id.* at 799.  The Statute of Frauds does not preclude a fraud claim when the plaintiff does not "use a fraud claim essentially to enforce a contract the Statute [of Frauds] makes unenforceable." *Id.*  Thus a claim is not barred when the plaintiff seeks out-of-pocket damages incurred in relying on the representations.  *Id.*  Damages that are not part of the benefit of the bargain are not precluded by the Statute of Frauds.  *See id.* at 799-800.

Here, the Choes do not seek, through their fraud claim, to enforce an otherwise unenforceable bargain.[5]  Nor is the Choes's fraud claim based on any oral agreement to alter the terms of their mortgage loan.  BOA is correct that, under Texas law, "[p]arties to a written contract that is within the provisions of the [S]tatute of [F]rauds . . . 'may not by mere oral agreement alter one or more of the terms.'"  *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967) (quoting *Robertson v. Melton*, 115 S.W.2d 624, 628 (Tex. 1938)).  But the Choes's fraud claim is not entirely dependent on modifying the terms of their mortgage loan agreement.  Rather, the Choes allege that BOA employees misrepresented to them that their loan modification application was being reviewed and that their home would not go into foreclosure during the loan modification review process.  They assert that, had BOA not made these misrepresentations, they would have continued to make mortgage payments and avoided foreclosure.  In other words, the Choes appear to allege that BOA's misrepresentations in connection with the loan modification application caused the Choes

---

[5]In fact, as explained *supra* at § III, the Choes fail to plead under Texas law the existence of any recognizable agreement separate and apart from the note and deed of trust.

- 13 -

to breach the terms of their mortgage loan agreement, not that BOA agreed to alter the terms of their mortgage loan or that BOA breached an oral agreement or oral modification of their mortgage loan.

Moreover, the damages the Choes seek are not limited to benefit-of-the-bargain damages. For example, they seek to recover various out-of-pocket costs, including filing fees, court costs, and attorney's fees. They also seek to recover mental anguish damages, which Texas has permitted parties to recover as damages for fraud. *See, e.g.*, *Parakkavetty v. Indus Int'l, Inc.*, 2004 WL 924725, at *2 (N.D. Tex. Mar. 12, 2004) (Fitzwater, J.) (citing cases in which Texas courts have permitted recovery of mental anguish damages for fraud). Because the Choes seek damages that exceed those available under a benefit-of-the bargain theory, the Statute of Frauds does not bar their claim. *See Haase*, 62 S.W.3d at 799; *see also Parakkavetty*, 2004 WL 924725, at *2 (holding that Statute of Frauds did not bar claim seeking damages "that exceed those available under a theory of benefit of the bargain, including mental anguish damages.").

D

BOA also argues that the economic loss doctrine bars the Choes's fraud claim. It maintains that the sole basis for liability against BOA is contractual in nature by the terms of the Choes's note and deed of trust. BOA posits that, because the Choes's fraud claim derives from the enforcement of their indebtedness, their tort damages are economic and arise from claims dependent upon the existence of a contract. The court disagrees.

Under Texas law, the acts of the parties to a contract "may breach duties in tort or

- 14 -

contract alone or simultaneously in both.  The nature of the injury most often determines which duty or duties are breached.  When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  This is generally known as the economic loss rule.  *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011).  But the Supreme Court of Texas has held that, despite this general rule, economic losses can still be recovered for certain tort causes of action, including fraud.  *See id.* at 418-19; *see also Haase*, 62 S.W.3d at 799 ("[E]conomic losses may be recoverable under either fraud or fraudulent inducement.").  This case is not, as BOA argues, one in which the sole basis for liability against the defendant is contractual in nature.  The Choes do not seek to hold BOA liable for actions that would breach the terms of the note and deed of trust.  Rather, they allege that BOA made certain misrepresentations of material fact during the loan modification application process that, in turn, led the Choes to mistakenly believe that "their responsibility was finished."  2d Am. Compl. ¶ 62.  They assert that, "[h]ad [BOA] been straight-forward from the beginning . . . then payments could have been made and foreclosure avoided."  *Id.* ¶ 65.  As pleaded, the nature of the Choes's injury is one stemming from acts of fraud, not breach of the note or deed of trust.  Accordingly, the economic loss doctrine does not bar the Choes's fraud claim.

V

BOA moves to dismiss the Choes's TDCPA claim, arguing that they have failed to plead any facts showing that BOA used deceptive means to collect a debt or threatened to take an action prohibited by law. The Choes respond that BOA violated the TDCPA because it accelerated their note based on defective notice; it sent the notice of foreclosure to "Chong Choe and Gretchen H. Cole" rather than to "Chong H. Choe and Gretchen H. Choe." *Id.* ¶ 69.

The TDCPA prohibits the use of fraudulent, deceptive, or misleading representations in the collection of a debt. Tex. Fin. Code Ann § 392.304. The Choes base their TDCPA claim on BOA's misspelling of Gretchen Choe's surname in the notices of default BOA mailed in September 2012. This court explained in *Choe I* that

> the Choes do not allege that they did not actually receive notice of default or that they believed the notices they did receive were meant for someone else. In fact, the amended complaint alleges the opposite. The Choes assert that BOA "sent Plaintiffs foreclosure notices," Am. Compl. ¶ 32, and that BOA "sent Plaintiffs a Notice of Trustee Sale and scheduled Plaintiffs' home for sale," *id.* ¶ 34. The amended complaint also alleges that the Choes actually received notice of the foreclosure, asserting that the Choes "inquired into the status of the loan modification *and the scheduled foreclosure date.*" *Id.* ¶ 36 (emphasis added). If the Choes had not received notice of the foreclosure they would have had no reason to have inquired into the scheduled foreclosure date. The Choes have therefore pleaded that they *did* receive notice of the proposed foreclosure. Moreover, the notice of default itself contains the Choes's mortgage account number, property address, and properly spells the name of Chong Choe.

*Choe I*, 2013 WL 3196571, at * 3. The allegations in the second amended complaint are

substantially the same, although the Choes have now pleaded specific court decisions that they maintain establish that there must be strict compliance with the notice requirement. As this court held in *Choe I*,

> [t]he Choes have not pleaded a plausible claim that BOA acted deceptively. They do not allege that the misspelling of Gretchen Choe's surname caused them to believe the notices they received were meant for someone else. In fact, the Choes plead that, after they received the notices, they had numerous conversations with BOA regarding the scheduled foreclosure of their property, thus precluding the inference that they did not receive the required notices.

*Id.* at *7. Because the Choes have failed to plead a plausible TDCPA claim, the court dismisses this claim.

## VI

Finally, the court considers the Choes's DTPA claim. BOA moves to dismiss this claim on the ground that the Choes are not DTPA "consumers." As in *Choe I*, the Choes do not respond to this argument. For the reasons explained in *Choe I*, the court dismisses the Choes's DTPA claim. *Id.* at *8 ("Because the Choes allege in their amended complaint that they sought to modify their mortgage loan and not to acquire, by purchase or lease, a 'good' or 'service,' they have not pleaded a plausible DTPA claim as a matter of law, and the claim is dismissed.").

\* \* \*

For the reasons explained, the court grants BOA's motion to dismiss under Rule 12(b)(6) except as to plaintiffs' fraud claim.

**SO ORDERED.**

November 25, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE